IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Marguerite Case,<br><br>                Plaintiff,<br><br>vs.<br><br>Charleston County School District and Janet Brown,<br><br>                Defendants. | 2:23-cv-3545-DCN-MHC<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff Marguerite Case ("Plaintiff"), complaining of Defendants Charleston County School District ("Defendant CCSD") and Janet Brown ("Defendant Brown"), would respectfully show as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* As alleged with greater particularity below, Defendant CCSD unlawfully discriminated against Plaintiff, a qualified individual with a disability, by failing and refusing to provide a reasonable accommodation for Plaintiff's disabilities, retaliating against Plaintiff for requesting accommodations and engaging in other activity protected under the ADA, subjecting Plaintiff to a hostile work environment based on her disabilities, and taking adverse action against Plaintiff based on her disabilities.

2. This also is an action for intentional infliction of emotional distress under South Carolina common law.

## PARTIES, JURISIDICTION, AND VENUE

3. Plaintiff Marguerite Case is an individual residing in Charleston County,

1

South Carolina.

4. Defendant Charleston County School District is a public school district operating in Charleston County, South Carolina.

5. Upon information and belief, Defendant Janet Brown is an individual residing in Charleston County, South Carolina.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it involves claims arising under the ADA.

7. In addition, this Court has supplemental jurisdiction over Plaintiff's claim under the common law of South Carolina, pursuant to 28 U.S.C. § 1367, because that claim arises out of the same transaction or occurrence that forms the basis of Plaintiff's federal law claims.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendants reside in this judicial district and division and the unlawful employment practices giving rise to Plaintiff's claims were committed within this judicial district and division.

9. Plaintiff has exhausted all administrative remedies required in employment discrimination actions under the ADA. Plaintiff timely filed a charge with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission (SCHAC Charge No.: 4-21-77D,RET; EEOC Charge No.: 415-2011-01128) on or about July 7, 2021. Plaintiff received a Notice of Right to Sue letter from the EEOC on or about April 24, 2023, and Plaintiff is filing this action within 90 days of the receipt of that letter.

**FACTUAL ALLEGATIONS**

10. Plaintiff is a South Carolina certified teacher and former employee of

Defendant CCSD.

11. Prior to terminating Plaintiff's employment in January 2022, Defendant CCSD employed Plaintiff for 17 years.

12. From 2008 to 2021, Defendant CCSD employed Plaintiff as a Literacy Interventionist at Ladson Elementary School under continuing contracts.

13. At all relevant times, Defendant Brown was the principal of Ladson Elementary School.

14. Plaintiff is well-qualified for the position of Literacy Interventionist. She holds a B.S. in Elementary Education from the College of Charleston and a M.Ed. in Leadership from Southern Wesleyan University. She is Reading Recovery Certified and trained in the research-based intervention programs of Wilson Fundations, Leveled Literacy Intervention, Sound Sensible, Open Court Phonics, Language Live!, and Fountas and Pinnell Phonics. She also is proficient in using ENRICH and FastBridge for assessment and data tracking.

15. At all relevant times, Plaintiff's job performance met or exceeded the expectations of her employer. Plaintiff achieved the highest performance ratings of exemplary or proficient on every evaluation she received at Ladson Elementary School.

16. In February 2021, Plaintiff was diagnosed with rheumatoid arthritis. Her symptoms from rheumatoid arthritis included severe fatigue, chronic pain, and joint inflammation. The disease also compromised Plaintiff's immune system, placing her at high risk for contracting and becoming seriously ill from COVID-19.

17. Due to the rapid progression of her rheumatoid arthritis, the severity of her symptoms, and her declining health, Plaintiff's rheumatologist recommended that she

3

work remotely for the remainder of the school year to limit her physical activity, stress, and potential exposure to COVID-19 while she began treatment for the disease, which initially requires close monitoring and frequent adjustment of medications.

18.     Plaintiff could perform all the essential functions of her job as a Literacy Interventionist from home due to the remote teaching technology already in place from the coronavirus pandemic. In fact, Plaintiff had worked from home over multiple weeks earlier in the school year, and as recently as January 2021, without issue.

19.     Defendant Brown and other CCSD administrators were aware of Plaintiff's developing health issues since at least mid-January 2021.

20.     In mid-February 2021, Plaintiff contacted Defendant CCSD Employee Relations to inquire about ADA accommodations, specifically remote work.

21.     Defendant CCSD Employee Relations Director Francine Mitchell ("Mitchell") emailed CCSD's ADA medical inquiry form to Plaintiff on February 16, 2021.

22.     Plaintiff's rheumatologist completed the ADA form and faxed it to Defendant CCSD on February 25, 2021.

23.     Plaintiff followed up with Defendant CCSD on March 1, March 9, March 16, and March 19, 2021, but received no substantive response to her accommodations request.

24.     On March 22, 2021, Plaintiff received a letter from CCSD Associate Superintendent Terri Nichols ("Nichols") denying her ADA accommodations request for the stated reasons that the accommodation Plaintiff sought would "pose an undue hardship to the District" and "Plaintiff's physician indicated on the medical information questionnaire that performing [Plaintiff's] job functions would not result in a direct safety

4

or health threat."

25. At no point prior to denying Plaintiff's ADA accommodations request on March 22, 2021, did Defendant CCSD notify Plaintiff of alleged deficiencies in her completed ADA request form, provide Plaintiff an opportunity to correct any alleged deficiencies, meet with Plaintiff to discuss her requested accommodation, offer alternatives to Plaintiff's requested accommodation, or otherwise engage Plaintiff in the interactive process required by the ADA.

26. While waiting for a determination on her first accommodation request, Plaintiff developed severe respiratory symptoms, including wheezing, coughing, shortness of breath, and chest tightness. Plaintiff was referred to a pulmonologist who, after many tests, diagnosed her with an unspecified respiratory illness believed to be a complication of COVID-19.

27. Because Plaintiff was unable to begin treatment for rheumatoid arthritis while her pulmonary issues persisted, her rheumatoid arthritis symptoms continued to worsen. By late March 2021, Plaintiff's joints were so swollen that just walking from her car to her office in the morning caused her excruciating pain, crippling her for the rest of the day.

28. In addition to these physical impairments, the pain and inflammation caused by rheumatoid arthritis, compounded by a lack of oxygen due to shortness of breath, began affecting Plaintiff's brain function. Plaintiff found herself slower to process information and experiencing pervasive brain fog.

29. Plaintiff's rheumatologist, in consultation with her pulmonologist, again recommended that Plaintiff work the remainder of the school year from home,

5

emphasizing the necessity of a safe, controlled environment to resolve her pulmonary issues and begin her rheumatoid arthritis treatment.

30. On March 30, 2021, Plaintiff's rheumatologist completed a second ADA medical inquiry form, to include Plaintiff's pulmonary issues, and faxed it to the number provided on Defendant CCSD's form.

31. After two weeks passed without contact from Defendant CCSD, Plaintiff again inquired about the status of her accommodations request on April 14, 2021.

32. Mitchell replied that Defendant CCSD had never received the form, so Plaintiff obtained a copy from her rheumatologist and emailed it to Mitchell directly on April 16, 2021. Mitchell confirmed receipt the same day.

33. On April 26, 2021, Defendant Brown, Mitchell, and Nichols met with Plaintiff via Zoom. In the meeting, which was brief and hostile, Defendant CCSD's administrators expressly declined to discuss Plaintiff's ADA accommodations request but issued Plaintiff a "directive" to continue teaching her students in person.

34. On May 1, 2021, Plaintiff, through counsel, submitted a third ADA accommodations request and medical inquiry form.

35. Finally, after several more weeks of waiting, following up, and depleting her sick leave, Plaintiff received a letter dated May 24, 2021, notifying her that Defendant CCSD had approved her accommodations request and authorized her to work remotely from home for the remainder of the 2020-21 school year. The school year ended on June 21, 2021.

36. On May 5, 2021, just days after Plaintiff retained counsel and submitted a third ADA accommodations request, Defendant Brown informed Plaintiff that she was

6

reassigning Plaintiff to a third-grade teaching position for the 2021-22 school year.

37. The reassignment changed the essential functions of Plaintiff's job. Specifically, the classroom teaching position was physically more strenuous than Plaintiff's Literacy Interventionist position and required interaction with significantly more students, parents, and staff, increasing Plaintiff's risk of exposure to COVID-19 and other illnesses.

38. Plaintiff objected to the reassignment based on her disabilities and requested that Defendant CCSD return her to the Literacy Interventionist position she had held for the last 13 years.

39. Defendant CCSD failed and refused to return Plaintiff to a Literacy Interventionist position or engage with Plaintiff to identify another suitable position for the 2021-22 school year for which Plaintiff was qualified.

40. As a result, Plaintiff was forced to take FMLA leave from August 16, 2021, to November 8, 2021.

41. Both prior to and upon the exhaustion of her approved FMLA leave, Plaintiff, personally and through counsel, submitted updated ADA and FMLA forms, as directed by Defendant CCSD, from three different medical providers on November 3, November 5, and November 17, 2021.

42. The medical certifications set forth Plaintiff's disabilities, resulting limitations, and recommended accommodations.

43. The medical certifications specifically recommended that Plaintiff be provided the reasonable accommodation of returning to a Literacy Interventionist position or additional leave time.

7

44. On November 28, 2021, Plaintiff received a letter from Defendant CCSD dated November 18, 2021, notifying her that her medical documentation was insufficient because the forms allegedly failed to specify an expected return date.

45. Plaintiff replied to the letter via email on December 2, 2021, noting that the ADA certifications she submitted indicated that, for extended leave purposes, her doctors were optimistic her conditions would be managed by January 2022. Plaintiff also noted that, as an alternative and preferred accommodation, in that it would enable her to work, her doctors recommended her reassignment to a Literacy Interventionist position, a request she had made repeatedly since learning of her assignment as a classroom teacher in May 2021.

46. Although only the ADA form was relevant by this point, as Plaintiff had exhausted her FMLA leave, and the ADA certifications that Plaintiff submitted should have been sufficient, Plaintiff again complied with Defendant CCSD's demand that she submit additional medical documentation with an anticipated return date by submitting revised ADA and FMLA forms from her pulmonologist on December 23, 2021.

47. On January 11, 2022, Plaintiff received a letter from Defendant CCSD stating that her request for additional leave "places an undue hardship on the District and therefore cannot be granted."

48. In denying Plaintiff's November and December 2021 ADA accommodations requests, Defendant CCSD neither explained how an accommodation of additional leave placed an undue hardship on Defendant CCSD nor acknowledged Plaintiff's request for reassignment to a Literacy Interventionist position; nor did Defendant CCSD offer alternative suggestions for reasonable accommodations.

49. Defendant CCSD terminated Plaintiff's employment effective January 25, 2022, because Plaintiff was unable to return to a classroom teaching position without accommodations.

50. At the time of Plaintiff's termination, Defendant CCSD had two Literacy Interventionist job openings posted on its website, including Plaintiff's former position at Ladson Elementary School.

51. Upon information and belief, Defendant CCSD has blackballed Plaintiff from all jobs with Defendant CCSD, as Plaintiff continued to apply to open positions with Defendant CCSD for which she was qualified but did not receive a job offer.

52. In addition to engaging in the above-described unlawful conduct with regard to Plaintiff's ADA accommodations requests, Defendant CCSD, through its agents, especially Defendant Brown, harassed and retaliated against Plaintiff based on her disability status and ADA accommodations requests from February 2021 through her termination from employment in January 2022.

53. Specific examples of Defendant CCSD's harassing and retaliatory conduct include, but are not limited to, the following:

   a. Making threatening and demeaning communications to Plaintiff regarding her job duties and health;
   b. Assigning extra duties to Plaintiff despite knowing of Plaintiff's physical limitations;
   c. Micromanaging and surveilling Plaintiff;
   d. Mocking Plaintiff's disabilities;
   e. Scrutinizing Plaintiff's use of sick leave;

9

    f.   Attempting to assign Plaintiff in-person tasks after Defendant CCSD granted Plaintiff's remote work accommodation;

    g.   Reassigning Plaintiff to a classroom teaching position;

    h.   Assigning Plaintiff to the farthest trailer from the faculty parking lot and main school building for her classroom teaching position;

    i.   Requiring Plaintiff to obtain and submit redundant medical certifications;

    j.   Providing inconsistent return-to-work dates during Plaintiff's FMLA leave; and

    k.   Failing to consider Plaintiff for available positions for which she was qualified.

54.   As a result of Defendants' unlawful actions, Plaintiff has suffered, and continues to suffer, damages, including, but not limited to, loss of income, loss of benefits, exacerbation of disability-related conditions, emotional distress, mental anguish, stress, loss of sleep, decreased enjoyment of life, humiliation, reputational harm, and attorney's fees and costs.

## FOR A FIRST CAUSE OF ACTION
### Failure to Accommodate in Violation of the ADA
### (42 U.S.C. § 12112(b)(5)(A))
### (Against Defendant CCSD)

55.   The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

56.   At all relevant times, Plaintiff was a person with a disability within the meaning of the ADA.

57.   At all relevant times, Defendant CCSD had notice of Plaintiff's disability.

58. At all relevant times, Plaintiff could perform the essential functions of her position as a Literacy Interventionist with reasonable accommodation.

59. Plaintiff requested accommodations from Defendant CCSD as described herein, including remote work, reinstatement to a Literacy Interventionist position, and extension of leave.

60. Plaintiff's requested accommodations were reasonable.

61. Plaintiff's requested accommodations would not create an undue hardship on Defendant CCSD.

62. Defendant CCSD failed to respond to Plaintiff's reasonable accommodations requests in a timely manner.

63. Defendant CCSD failed to notify Plaintiff of alleged deficiencies in her medical documentation and offer Plaintiff an opportunity to correct any alleged deficiencies.

64. Defendant CCSD failed to engage Plaintiff in the interactive process.

65. Defendant CCSD failed and refused to accommodate Plaintiff's disabilities.

66. Defendant CCSD acted with malice or reckless indifference to Plaintiff's federally protected rights.

67. Defendant CCSD knew or reasonably should have known its conduct was unlawful.

68. As a result of Defendant CCSD's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, Plaintiff has suffered, and continues to suffer, damages.

### FOR A SECOND CAUSE OF ACTION
### Disparate Treatment in Violation of the ADA
### (42 U.S.C. § 12112(a))
### (Against Defendant CCSD)

69. The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

70. At all relevant times, Plaintiff was a qualified individual with a disability.

71. At all relevant times, Plaintiff met the legitimate expectations of Defendant CCSD.

72. Defendant CCSD took an adverse employment action against Plaintiff.

73. Defendant CCSD's adverse employment action against Plaintiff raises a reasonable inference of unlawful discrimination.

74. Defendant CCSD acted with malice or reckless indifference to Plaintiff's federally protected rights.

75. Defendant CCSD knew or reasonably should have known its conduct was unlawful.

76. As a result of Defendant CCSD's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, Plaintiff has suffered, and continues to suffer, damages.

### FOR A THIRD CAUSE OF ACTION
### Retaliation in Violation of the ADA
### (42 U.S.C. § 12203(a))
### (Against Defendant CCSD)

77. The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

78. Plaintiff engaged in activity protected under the ADA by requesting reasonable accommodations for her disability, threatening to file a charge of disability discrimination with the EEOC, and filing a charge of disability discrimination with the EEOC.

79. Defendant CCSD retaliated against Plaintiff for engaging in activity protected under the ADA by reassigning Plaintiff to a classroom teaching position, refusing to consider Plaintiff for available positions for which she was qualified, and otherwise engaging in the conduct described herein that adversely affected the terms and conditions of Plaintiff's employment.

80. As a result of Defendant CCSD's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, Plaintiff has suffered, and continues to suffer, damages.

**FOR A FOURTH CAUSE OF ACTION**
**Harassment in Violation of the ADA**
**(42 U.S.C. §§ 12112(a) and 12203(b))**
**(Against Defendant CCSD)**

81. The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

82. At all relevant times, Plaintiff was a qualified individual with a disability.

83. Defendant CCSD, through its administrators, and especially Defendant Brown, subjected Plaintiff to unwelcome harassment by engaging in the conduct described herein.

84. Defendant CCSD's harassment was based on Plaintiff's disability.

85. The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of Plaintiff's employment.

86. Defendant CCSD acted with malice or reckless indifference to Plaintiff's federally protected rights.

87. Defendant CCSD knew or reasonably should have known its conduct was unlawful.

88. As a result of Defendant CCSD's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, Plaintiff has suffered, and continues to suffer, damages.

### FOR A FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Defendant Brown in Her Individual Capacity)

89. The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

90. Defendant Brown, acting in her individual capacity, intentionally or recklessly inflicted severe emotional distress upon Plaintiff as alleged in detail above.

91. Defendant Brown's conduct was so extreme and outrageous that it exceeds all possible bounds of decency and is furthermore atrocious and utterly intolerable in a civilized community.

92. The actions of Defendant Brown have directly and proximately caused Plaintiff to suffer emotional distress.

93. The emotional distress suffered by Plaintiff is so severe that no reasonable person could be expected to endure it.

**WHEREFORE,** having fully complained of Defendants, Plaintiff demands a jury trial and prays for the following relief:

   A. Reinstatement;

B. Back pay;

C. Lost benefits;

D. Front pay;

E. Compensatory damages;

F. Actual damages;

G. Punitive damages;

H. Pre- and post-judgment interest;

I. Attorney's fees and costs; and

J. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/Grant Burnette LeFever
Grant Burnette LeFever (Fed. Bar No.: 12943)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7920
Fax  (803) 904-7910
GLeFever@BurnetteShutt.Law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

July 21, 2023